THE CORTLAND SAVINGS BANK, Plaintiff, *v.* FREDERICK S. LIGHTHALL et al., Defendants.

(Supreme Court, Oneida Special Term, March, 1907.)

Foreclosure of mortgages on land — Foreclosure by action and sale — Sale: Notice — Sufficiency of publication; Setting aside sale — Inadequacy of price.

Where, on foreclosure sale, the premises are purchased by the plaintiff in the action, the only bidder, for $11,035.19, and, upon a motion to confirm the referee's report of sale, the plaintiff's affidavits tend to show that the purchase price was reasonable, and no infants' interests are involved, the affidavits of six persons, read

in opposition, stating that in their opinion the market value of the premises was from $12,000 to $14,000, are insufficient to justify setting aside the sale for inadequacy in the purchase price.

Where the sale took place on Tuesday, January 8, 1907, a notice of sale published twice in each week for three successive weeks immediately preceding the day of sale, the first publication being Tuesday, December 18, 1906, is sufficient; and a contention that both the first and last days of publication should be excluded is erroneous.

MOTION by plaintiff to confirm referee's report of sale in real estate foreclosure action. Frederick S. Lighthall, mortgagor, and Title Trust & Guaranty Company, junior mortgagee, defendants, oppose the motion and demand a resale.

Ernest J. Edgcomb, for plaintiff.

Oliver D. Burden, for defendant Lighthall.

William H. Harding, for defendant Title Trust & Guaranty Company.

DE ANGELIS, J. The sale is attacked on three grounds: *First,* that the publication of the notice did not satisfy the statutory requirements; *second,* that the sale was not fairly conducted, and *third,* that the price was inadequate.

The premises were a house and lot on James street, in the city of Syracuse. The sale took place January 8, 1907. The plaintiff purchased the property at the sale for $11,035.19, just the amount of the mortgage debt, costs, unpaid taxes and expenses of sale. There was no other bid.

The defendants read the affidavits of six persons as to the value, three lawyers, two real estate agents and one whose occupation is not disclosed. Their valuation ranges from $12,000 to $14,000. Their manner of describing value is peculiar. The two who give "market" value use the expression " fair and *intrinsic* market value." One of these puts such value at $13,000 to $14,000, but says that on a resale he would bid or cause to be bidden only $12,000 for the prop-

erty. The other puts such value from $12,000 to $13,000. The other four fail to give "market" values and use the expressions, respectively, " fairly and intrinsically worth the sum of from $13,000 to $14,000," " in his estimation is actually and intrinsically worth the sum of at least $12,000 to $13,000," " intrinsically worth the sum of $14,000," and " fair and reasonable value is the sum of about $14,000."

I assume, however, that these affiants intended to express their opinion of the market value of the property, but do not think that they make out a case of inadequacy in the purchase price which would justify setting aside the sale, within the authorities, if, in other respects, the case was a proper one to call for such relief.

The plaintiff's affidavits tend to show that the purchase price was reasonable.

In addition, it appears that there are no infants' interests involved; that both of the complaining defendants were represented at the sale, and that one of them, the junior mortgagee, is a trust company having the next lien to that of the plaintiff's mortgage, for an amount far in excess of the difference between the plaintiff's bid and the highest valuation of the property suggested by the defendants, and presumptively quite able to have protected itself.

The claim that the sale was unfair seems to rest on the theory that the plaintiff designed to get the property for its debt, costs, taxes and expenses of sale, with some undisclosed purpose, and to accomplish that end did something to discourage and prevent bidding. It appears that when the sale was called the referee announced that it would be a cash sale. This was unusual, although not illegal. But, upon the request of the representative of the junior mortgagee, the terms of sale were changed so as to provide for a down payment of ten per cent. of the purchase price. It is not improbable that the referee and the plaintiff's attorney assumed that no one would bid more than the mortgage debt, costs and expenses of the sale, and announced in the first place a cash sale for that reason. If that was their idea, it seems to have been justified, because no other bid was made. It is claimed that some of the persons attending the sale

Supreme Court, March, 1907.      [Vol. 53.

departed when the announcement was made that it was to be a cash sale. There were eight persons present when the sale actually took place and the only one of those that makes an affidavit that any person present when the sale was called departed before it was closed is the defendant William S. Lighthall. This affiant says a number of persons departed from the sale, but mentions no names. No one makes an affidavit that he left the sale because of the announcement that the sale was to be a cash sale. It appears that a written notice was served by the attorney for the mortgagor upon the referee, before the sale, which was publicly read and in which it was claimed that the sale had not been legally advertised. If persons attending the sale departed before its close, may it not be fairly said that this notice was as much the cause of their withdrawal as the announcement of a cash sale? The affiant Lighthall states that one Cogswell informed him that he intended to bid at the sale but that prior thereto one Webb, who made the bid for the plaintiff, told him that he, Webb, intended to bid for the plaintiff the face of its mortgage, and that the property was in bad condition and needed extensive repairs and painting. The affiant does not say that Cogswell stated that he failed to attend the sale on account of the talk, nor does he disclose what Cogswell proposed to bid for the property. No affidavit was made by Cogswell. The affiant Lighthall stated that the property was not in a bad state of repair and that the total cost of repainting and putting it in perfect *exterior* condition would not exceed $150. In the only other affidavit on the subject used by the defendants, the affiant states " that, upon inspection, the *exterior* property seemed to him in a good condition and state of repair and that only a very small sum of money, if any, would need to be expended in order to put the premises in perfect condition and appearance."

It also appeared that the plaintiff's attorney refused to postpone the sale.

In view of these circumstances I cannot say that the sale was unfairly conducted.

The principal contention of the defendants is that the notice of sale was not sufficient in law.

In this connection it is not disputed that the attorneys for the two complaining defendants were served with printed copies of the notice of sale on the eighteenth day of December, and that on that day a printed copy of the notice was posted in three public places in the city of Syracuse. The statute did not require this.

As noted above, the sale took place on Tuesday, January 8, 1907. The notice of sale was published in the *Post-Standard,* a daily newspaper published in the city of Syracuse, in the month of December, 1906, on Tuesday, the eighteenth, on Friday, the twenty-first, on Wednesday, the twenty-sixth, and on Friday, the twenty-eighth, and in the month of January, 1907, on Wednesday, the second, on Friday, the fourth, and on Tuesday (the day of sale), the eighth. I regard the last publication as of no consequence.

Section 1678 of the Code of Civil Procedure required publishing " notice of the sale at least twice in each week for three successive weeks immediately preceding the sale."

It has been repeatedly held that a week is the period of time between midnight Saturday and midnight of the following Saturday. The notice was published twice in each week for the three successive weeks immediately preceding the sale, as appears from the dates of the publication above stated.

Again, assuming that the notice should have been published twice in each of three successive periods of seven days immediately preceding the sale, it was so published. There were two publications in the period of seven days from January seventh to January first, both inclusive (counting backwards), two publications in the period of seven days from December thirty-first to December twenty-fourth, both inclusive, and two publications in the period of seven days from December twenty-third to December sixteenth, both inclusive.

But the defendants claim that the statute required the first publication to have been at least twenty-one days before the day of sale. In this, I think, they are mistaken. If the notice was published twice in each of the three successive weeks immediately preceding the sale and the first publica-

tion was less than twenty-one days before the day of sale, the language of the statute would have been satisfied. Such a notice has been held to be good. Wood v. Morehouse, 45 N. Y. 368; Valentine v. McCue, 26 Hun, 456.

But the first publication was twenty-one days before the day of sale. In the case of such a notice, the statutes provide that, in computing the time, the day of the first publication shall be excluded, but the day on which the sale is to take place shall be included. The position of the defendants is that both these days should be excluded, because, they say, that this notice was one day short, and they invoke section 27 of the Statutory Construction Law. That section requires no such computation. It is not and was not intended to be in conflict with section 787 of the Code of Civil Procedure, which provides as follows: " The period of publication of a legal notice, in an action or special proceeding, brought in a court, either of record or not of record, or before a judge of such a court, must be computed, so as to exclude the first day of publication, and include the day, on which the act or event, of which notice is given, is to happen, or which completes the full period of publication."

After December eighteenth, the day of the first publication, there were thirteen days in December and, including the day of sale, there were eight days in January, making the first publication twenty-one days before the sale.

This construction of the law has been universally recognized, I believe, by the profession and has been approved by the courts. Bunce v. Reed, 16 Barb. 347; Taylor v. Corbiere, 8 How. Pr. 385; Ball v. Mander, 19 id. 468.

Market National Bank v. Pacific National Bank, 89 N. Y. 397, cited by the defendants, is easily distinguished from the case at bar.

The motion to confirm is granted.

**Motion granted.**